## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GROVER J. KELLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC., JOSEPH E. ALMEIDA, JAMES K. SACCARO, and JAMES W. BORZI,<br><br>Defendants. | Case No.  1:23-cv-4497<br><br>CLASS ACTION COMPLAINT<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Grover J. Kelley ("Plaintiff") alleges the following upon information and belief, except as to those allegations concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of his undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of Baxter International, Inc. ("Baxter" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) reports of securities and financial analysts; (c) news articles; and (d) industry reports.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### <u>NATURE OF THE CLAIM</u>

1.      Plaintiff brings this action pursuant to of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, et seq., and Rule 10b-5 promulgated thereunder, on behalf of himself and all persons similarly situated who purchased or otherwise acquired Baxter securities between May 25, 2022 and February 8, 2023, inclusive (the "Class Period").

2.     Baxter is a multi-national healthcare company, primarily focusing on products designed to treat kidney disease and other chronic and acute medical conditions.  During the Class Period, Defendants materially misrepresented and/or concealed the true nature and severity of supply chain problems it was encountering and the impact they were having on the Company's current and expected earnings.  Defendants' failure to disclose Baxter's true problems relating to its supply chain deceived investors (including Plaintiff) about the Company's true financial health and earnings.

3.     Baxter provided the market with false and misleading guidance in order to prop up investor expectations and share prices in hopes of outperforming and/or perpetuating investor expectations long enough for its supply chain problems to subside.  This was a reckless gamble that resulted in shareholder losses.  On February 9, 2023, after making numerous statements assuring investors that it could operate successfully despite global challenges to its supply chain, Baxter revealed that it had not achieved control over its supply chain problems that its earnings guidance had been unreliable for some time—Defendants knew the supply chain issues were going to continue to be an insurmountable problem but strung the investing public along to prop up the Company's share price.

4.     Through partial disclosures throughout the Class Period, Baxter's stock price continued to drop momentarily, plateauing until the next partial disclosure was made.  When the final revelation came on February 9, 2023, Baxter's shareholders immediately lost nearly $1.25 billion on extremely heavy volume.

5.     Investors in Baxter have suffered significant losses.  This action seeks to compensate those investors and recover the damages they sustained because of Defendants' fraudulent conduct.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7.      This Court has subject matter jurisdiction over this action under Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

8.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

## PARTIES

10.      Plaintiff purchased Baxter securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Baxter is attached hereto.

11.      Defendant Baxter is a Delaware corporation with its principal executive offices located at One Baxter Parkway, Deerfield, Illinois 60015. During the Class Period, Baxter's securities traded in an efficient market on the New York Stock Exchange ("NYSE") under the symbol "BAX".

12.      Defendant Jose E. Almeida ("Almeida") is Baxter's CEO, President, and Chairman of its Chairman. Before joining Baxter, Almeida served as chairman, president and CEO of

Covidien plc from 2012 to 2015, and as its president and CEO from 2011 to 2012. Prior to these positions, he held a range of senior leadership roles at Covidien and its predecessor organization, Tyco Healthcare, including as president, Medical Devices, and president, International. Describing himself as a career healthcare veteran, Almeida also held leadership and management roles at multiple companies across the industry. Relevant to the issues in this action, Almeida participated in all the relevant investor day calls and certified the Company's SEC submissions.

13. Defendant Jay K. Saccaro ("Saccaro") was Baxter's Executive Vice President and CFO. Saccaro originally joined Baxter in 2002 as Manager of Strategy for its BioScience business, and over the years assumed positions of increasing responsibility, including Vice President of Financial Planning, Vice President of Finance for operations in Europe, the Middle East and Africa and Corporate Vice President and Treasurer. Saccaro left Baxter for seven months in 2014, serving as Senior Vice President and Chief Financial Officer at Hill-Rom Corporation before rejoining Baxter. Altogether, Saccaro had been with Baxter for a cumulative 21 years including the last eight as finance head, before leaving at the end of May 2023. Relevant to the issues in this action, Saccaro also participated in all the relevant investor day calls, and he also signed the Company's SEC submissions.

14. Defendant James W. Borzi ("Borzi") was Baxter's Senior Vice President and Chief Supply Chain Officer. Borzi joined Baxter in August 2020 from GE Healthcare, where he served as vice president, chief supply chain officer from 2019 to 2020. Prior to joining GE Healthcare, he spent five years with Becton Dickinson ("BD") in various manufacturing operations leadership roles; his last role with BD was executive vice president of Global Operations and chief supply chain officer. In fact, according to Baxter's website, Borzi has more than 30 years of operations

4

and supply chain leadership experience across diverse industries. Relevant to the issues in this action, Borzie also participated in relevant investor day calls.

15.     Defendants Almeida, Saccaro, and Borzi are collectively referred to herein as the "Individual Defendants."

16.     Each of the Individual Defendants:

(a)     directly participated in the management of Baxter;

(b)     was directly involved in the day-to-day operations of Baxter at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of Baxter's business and finances;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning Baxter; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

17.     Because of the Individual Defendants' positions within Baxter, they had access to undisclosed information about the true state and projections of its supply chain issues via access to internal corporate documents (including Baxter's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

18.     As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to supply chain issues and their effect on Company operations, including Baxter's present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of Baxter's securities would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19.     The Individual Defendants, because of their positions with Baxter, possessed the power and authority to control the contents of Baxter's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of Baxter's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Baxter's securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

The scheme deceived the investing public concerning international supply chain issues and their effect on the Company's operations. This scheme caused Plaintiff and other shareholders to purchase Baxter's securities at artificially inflated prices.

## FACTUAL BACKGROUND

21. Baxter develops and provides a portfolio of healthcare products worldwide. Raw materials and component parts are essential to its business and are purchased from numerous suppliers worldwide in the ordinary course of business. While many of these materials are generally available, there have been several roadblocks preventing the free flow of its supply in recent years—such as the COVID-19 pandemic and the Russian war in Ukraine. The Company has, at times, experienced shortages of supply.

22. Baxter regularly provided investors with information regarding its earnings per share and provided guidance on its future earnings. Starting in May 2022, Defendants provided healthy earnings guidance due, in its words, to being able to control problems arising with its supply chain. Over regular intervals throughout the Class Period, Defendants continued to make similar sanguine projections, artificially propping up the Company's stock price, until they could not do so any longer. By February 9, 2023, when it made its public statements about the realities of its supply chain problems throughout 2022 and also reduced its future earnings guidance to conform to this information.

23. In response to the announcement, Baxter's stock price plummeted as investors and analysts reevaluated the true operational risks inherent in Baxter's supply chain issues. Throughout the Class Period, Baxter's stock price slowly lost value, but when the truth finally was revealed, the bottom fell out. In the span of just a day, Baxter's stock price substantially, eliminating nearly $1.25 billion in market capitalization.

## SUBSTANTIVE ALLEGATIONS

**A.** *False and/or Materially Misleading Statements*

24.     Defendants misrepresented Baxter's financial health and operations by making false and/or materially misleading statements about the ability to weather interruptions to its international supply chains.  These statements concealed from investors the true nature of Baxter's finances and future earnings calculations, which, in turn, artificially inflated the price of Baxter's securities.

25.     In order to conceal the Company's true financial condition from investors throughout the Class Period, the Individual Defendants issued a series of pervasive and material misstatements and omitted material facts in the Company's public filings and press releases.  These material misstatements and omissions created the false impression that Baxter was financially stable, and its financial condition was improving following the conditions created due to the Covid Pandemic and international wars.  This false impression caused the Company's stock price to be artificially inflated throughout the Class Period.  As investors would eventually learn, Baxter's loss exposure and financial condition were far worse than represented.

### *May 25, 2022*

26.     On May 25, 2022, Baxter participated in an Investor Teleconference.  In the press release signed by Saccaro preceding the Investor Day call, Defendants highlighted that the conference would feature an overview of key steps Baxter was taking to bolster the strength of its supply chain function in response to materials, labor and freight pressures facing industries globally.  They also provided new long-range financial guidance for 2022 to 2025:

> constant currency sales growth of 4% to 5% on a compounded annual basis from 2022 through 2025.  The company expects 2025 adjusted operating margin to expand by 350 to 400 basis points as compared to expected year-end 2022.  Baxter anticipates free cash flow conversion of more than 80% by 2025.

27.     During the call, Almeida represented the following in response to analyst questions about balance sheet stability:

> One significant change that we never spoke about in the past was integrated supply chain, how the supply chain plays a role because we always look at supply chain to deliver first patient safety and quality and then cost effectiveness in making the products and be able to get the right product at the right cost at the right time.  To be able to do this today, things have probably most radically changed in this area than anything else.  What we, as executives, grew up with was putting manufacturing locations to drive lower cost and tax effectively.  That's what we did.  You see many companies that have worked for and including here at Baxter was putting factories in places there were actually very cost-effective and very tax-effective.
>
> When you look at the trend going forward is you've got to put the plants where you sell the product, and you've got to buy the components where you have your plants because the supply chain, the cost of moving things around the world and when things get really clogged up in ports, the next thing you do is put in the valley of an airplane and that costs a lot of money.  And you end up eroding your profit to a point that you cannot make up in any cost reduction because of the location of the plant.  So you're going to hear from Jim Borzi today how Baxter has moving -- is moving very quickly to alleviate that kind of issue that we have.

28.     When Borzi spoke, he reiterated the strengths of the Company's integrated supply chain team, noting that they were fully covered going into 2023 and were well on their way to full coverage for 2024 and 2025.  Borzi also regaled listeners of his 38 years in the industry such that he was well positioned to tackle supply chain problems culminating from the "challenges that COVID brought, the semiconductor shortage, oil prices, [and] the war in Ukraine."

29.     Saccaro added that:

> Throughout 2022, demand for our products and therapies remained solid, but supply chain challenges impacted our ability to fully supply this demand.  We experienced record levels of backorders and backlog, particularly for the legacy Hillrom business.  And while we observed positive development and supply availability in the fourth quarter of 2022, we currently anticipate component availability will remain challenging and will continue to hamper top line sales in 2023.  We are working relentlessly to secure components and address order backlog, and our expectation is that supply for electromechanical components will improve in the second half of the year.

30.     In response to questions regarding the Company's explanation why its adjusted earnings decreased 15% to $0.88 per share outside and that the Company's guidance range was $0.92 to $0.99 per share, Saccaro further noted that:

> [W]e biased our guidance towards capturing additional potential downside risks. We recognize that our performance last year disappointed investors and us alike. While we are confident the actions we are undertaking will set us on force for improved performance longer term, we have recognized that 2023 will be a transition year on our path to achieving this objective.
>
> Incorporating all of these factors, I'll now walk through our guidance and expectations. For full year 2023, we expect global sales growth of 1% to 2% on a reported basis and flat to 1% growth on a constant currency basis. We expect full year adjusted operating margin to be between 15% and 16%. Interest expense is expected to total approximately $540 million, which reflects pass and potential future rate increases and adjusted tax rate of approximately 22% and a diluted average share count of 508 million shares.
>
> Based on these dynamics, we expect 2023 adjusted earnings, excluding special items, of $2.75 to $2.95 per diluted share. Specific to the first quarter of 2023, we expect global sales to decline by approximately 3% on a reported basis and approximately 1% on a constant currency basis. And we expect adjusted earnings, excluding special items, of $0.46 to $0.50 per diluted share.

31.     Baxter's stock price closed that day at a high of $73.96 per share.

*July 28, 2022*

32.     On July 28, 2022, prior to filing its quarterly report on Form 10-Q with the SEC for the second quarter of 2022, Baxter issued a press release in which it disclosed that its earnings guidance was now: "$1.82 to $1.92 per diluted share and adjusted earnings, before special items, of $3.60 to $3.70 per diluted share."

33.     The press release further described Baxter's financial outlook for the full year of 2022 as follows:

> For full-year 2022: … The company expects high-teens sales growth on a reported basis, mid-20s sales growth on a constant currency basis and 2% to 3% on an operational basis. Baxter's updated full-year financial outlook reflects ongoing

supply chain challenges causing increased inflationary pressures as well as difficulty in accessing critical components along with the impact of increased prices of diesel fuel impacting freight expenses.

For third-quarter 2022: The company expects high-teens sales growth on a reported basis, mid-20s sales growth on a constant currency basis and low single-digit sales growth on an operational basis. The company expects U.S. GAAP earnings of $0.46 to $0.50 per diluted share and adjusted earnings, before special items, of $0.79 to $0.83 per diluted share.

34.     Also on July 28, 2022, Defendants Saccaro and Almeida participated in an investor conference call on behalf of Baxter. During the call, Saccaro described Baxter's supply chain issues while, at the same time, representing that the Company had now "put forth the best forecast available, the most realistic -- conservatively realistic forecast available reflecting what current prices are, what our current understanding of plant shutdowns will be." He went on to say that demand for Baxter's "products remain strong, and [its] integrated supply chain and commercial teams are working tirelessly to get products in the hands of [its] customers and patients." In fact, Sacarro and Almeida also blamed the Company's capital expenditure problems not on supply issues, but on "staffing" issues.

35.     Baxter's announcement lowering guidance revealed, in part, that the supply chain and/or operational issues previously discussed were more severe than initially represented. At the same time, however, Defendants continued to mislead the public through their statements during the conference call by continuing to conceal the true extent of supply chain problems affecting Baxter's financial earnings and operations.

36.     The day before this press release, Baxter's stock price closed at $66.80. By the time the markets closed on the day the press release was made, Baxter's stock price declined to $59.50 per share.

*October 27, 2022*

37.     On October 27, 2022, prior to filing its quarterly report on Form 10-Q with the SEC for the third quarter of 2022, Baxter issued a press release in which it disclosed that it would be lowering its earnings guidance to a "loss of $4.52 to $4.45 per diluted share and adjusted earnings of $3.53 to $3.60 per diluted share."

38.     In its 10-Q third quarter earnings report filed with the SEC made similar statements about ongoing challenges to its international supply chain's effects on its operations, but continued to maintain an optimistic level of earnings guidance.

39.     In pertinent part, after noting that the Company would continue to face operations pressure due to global supply chain constraints, they assured investors that they were working on solutions, noting:

> In recent years, we have undertaken actions to transform our cost structure and enhance operational efficiency. These efforts include restructuring the organization, optimizing the manufacturing footprint, R&D operations and supply chain network, employing disciplined cost management, and centralizing and streamlining certain support functions.

40.     Similarly, during an earnings conference call held the same day, Almeida stated in pertinent part as follows:

> While we see signals that some of these macro factors may begin to ease next year, our current expectation is that select supply constraints will persist into 2023, particularly as it relates to semiconductors, where we continue to see high levels of volatility in supply.

> During the quarter, we experienced several decommits from various suppliers, meaningfully impacting our overall demand planning process. We have also seen supply constraints from other raw materials, which has further impacted performance. In total, we estimate that the semiconductor and raw material constraints we've experienced negatively impacted Baxter top line performance in the quarter by more than $100 million or approximately 400 basis points. And on a year-to-date basis, we estimate this figure to be approaching $300 million. We continue to take decisive action to help mitigate these constraints and position the company for improved future performance.

Some of the actions we have already undertaken include extending the horizon of our demand forecast out to 24 months for supply-constrained categories to allow our suppliers to allocate capacity and inventory to Baxter over a long horizon; validating alternate supply options to provide flexibility in sourcing; establishing direct buy relationships with critical secondary component suppliers; enhancing our manufacturing processes to further optimize material usage and reduce waste; and meeting with the management teams of our key suppliers and select government officials to reinforce the criticality of Baxter's products.

We are confident that these actions will further enhance our ability to help mitigate supply chain impacts on Baxter's near and midterm performance. At the same time, we remain focused on improving the operational efficiency across the organization. We've already implemented several initiatives that I expect to drive improved future performance, including ensuring that we have the optimal organization structure and business processes in place. In addition, we are pursuing some near-term actions to help offset the increased expenses we're experiencing.

41.     The day before Defendants made these statements to the public and lowered its earnings guidance, Baxter's stock price closed at $57.63.  By the time the markets closed that day, Baxter's stock price declined to $53.97 per share.

*January  6, 2023*

42.     In a press release issued on January 6, 2023, and filed with the SEC in a Form 8-K, Baxter announced that it was spinning off its Renal Care and Acute Therapies global business units and that it was simplifying its operating model and manufacturing footprint to improve operational efficiencies.

43.     Almeida stated that Baxter was:

confident that the strategic actions we are announcing today will help ensure that each of these entities, and the incredibly strong and dedicated group of colleagues that comprise them, are on the best possible trajectory moving forward.  Realizing the full impact of these decisions will take time, but we believe they are essential to enhance our focus, fuel our innovative spirit, and, most crucially, deliver optimal results for the patients, clinicians, shareholders, and other stakeholder communities that depend on us.

44.     This new operating model was characterized as simplifying Baxter's operations, noting that: "this simplified structure should create a more resilient supply chain and greater

alignment with the company's manufacturing footprint, better positioning the organization to deliver against the operational and investment priorities of Baxter's businesses."

45.     The Individual Defendants made similar statements in the Company's Investor Call prior to the market opening. For instance, Almeida stated that the Company was "continuing to double down on the digital transformation of operations to increase efficiencies especially in automation, supply chain resiliency and digital analytics."   Saccaro seconded Almeida's characterizations of the "resiliency" of the Company's supply chain by noting that:

> Within operations, we will transform our total cost structure through manufacturing plant disentanglements to create Baxter's specific plans and optimize our distribution network strategy. Coupled with our redesign structure, we expect to drive improved accountability, simplified reporting and a more resilient supply chain.
>
> We've spent the last several months assessing our operations across our entire network down to the line level, and we feel confident in our detailed execution plan to deliver a leaner, more efficient, more responsive and more cost-effective manufacturing footprint for both organizations.
>
> Today's announcement [regarding spinning off of the Company's Renal Care unit] will enable us to progress to the implementation phase of this comprehensive plan. This proposed spinoff should lead to accelerated growth from additional investments in sales and marketing and R&D in the near and long term, and we expect it will create a path towards improved margins that will position Baxter to create additional shareholder value over time.

46.     These statements revealed to the market that, despite Defendants' statements to the contrary, Baxter's supply chain issues were worse than represented.  At the closing bell on January 6, Baxter's stock price had dropped to $48.45 per share from $52.57, the closing price the day before.

* * *

47.     Defendants' statements referenced in ¶¶ 26 – 46 constituted violations of the securities laws because the statements were false and/or misleading as well as failed to disclose

14

material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company concealed the true extent of the supply chain problems it was experiencing while simultaneously exaggerating its ability to maintain a healthy supply chain in the face of global pressures; (ii) as a result, the Company's projected earnings were materially misleading during the Class Period; (iii) the foregoing, once revealed, was reasonably likely to have a material negative impact on the Company's financial condition; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**B.** *The Truth Emerges*

<u>*February 9, 2023*</u>

48. On February 9, 2023, before market hours, Baxter issued a press release to report on its Fourth-Quarter and Full-Year 2002 earnings results. The press release revealed that despite its assurances during the Class Period, the problems with its supply chain and its effect on its operations was not under control, that it did not meet its earnings guidance for the year, and that earnings guidance going forward would have to be lowered for the first quarter of 2023.

49. In pertinent part, the press release stated that "[o]ngoing macroeconomic challenges and supply chain headwinds continue to weigh on business performance." The press release also stated that the Company's full-year U.S. GAAP diluted earnings resulted in a loss of $4.83 per share.

50. That same day, Baxter filed its annual report for fiscal 2022 on Form 10-K with the SEC. In the annual report, Baxter stated in pertinent part that:

> Raw materials and component parts essential to our business are purchased from numerous suppliers worldwide in the ordinary course of business. While many of these materials are generally available, we have experienced and may in the future experience shortages of supply. …. In recent periods, we have experienced

15

increased costs and shortages of raw materials and component parts (including resins and electromechanical devices), which has had a negative impact on our profit margins, due to the increased costs, and on our sales for certain product categories, due to our inability to fully satisfy demand.

…

We are not always able to recover cost increases for raw materials and component parts through customer pricing due to contractual limits, where applicable, and market forces. This circumstance occurred during 2022 and our profit margins were adversely impacted because we were unable to fully offset all such cost increases through customer pricing adjustments or other pricing actions. We seek to utilize long-term supply contracts with some suppliers to help maintain continuity of supply and manage the risk of price increases. Our ability to do so in the face of limited supply of certain raw materials and component parts and inflationary environment may be limited.

51.     In describing various risks related to the performance of its stock price, it included, among other things:

•Global economic conditions, including inflation and supply chain disruptions, have adversely affected, and could continue to adversely affect, our operations.
•Issues with product supply or quality could, among other things, have an adverse effect on our business or cause a loss of customer confidence in us or our products.

52.     When the smoke cleared at the end of the trading day, Baxter's stock had dropped from $45.68 per share to $41.01 per share. The sheer volume of shares traded that day was nearly five times the daily average that its shares had been trading.

53.     Analyst reports commented negatively on Baxter's change in guidance. In pertinent part, Morningstar wrote the following on February 9, 2023: "Additionally, we are disappointed that management stepped away (again) from recently given guidance, which implies that the team may not have its arms fully around the operational challenges it faces. For example, on the third quarter call, management said that earnings growth was possible in 2023, but its new guidance for 2023 represents a 16%-21% reduction from 2022, which was already lower than 2021. Prior to that, the team similarly reduced guidance for 2022 in the quarterly call directly after

giving a long-term double-digit earnings growth target at its investor day in May, and management is now refraining from giving long-term guidance at all."

**C.   *Loss Causation***

54.     The market for Baxter common stock was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Baxter stock traded at artificially inflated prices during the Class period.  Plaintiff and other members of the Class purchased or otherwise acquired Baxter stock relying upon the integrity of the market of Baxter and market information related to the Company and have been damaged thereby.

55.     During the Class Period, Defendants named in this Action materially misled the investing public, thereby inflating the price of Baxter stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make their own statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Baxter's business, operations, and prospects as alleged herein.

56.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Baxter's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating and/or maintaining in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus

causing the Company's stock to be overvalued and artificially inflated at all relevant times. The materially false and/or misleading statements made by Defendants named in this Action during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

57. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that caused the price of Baxter stock to be artificially inflated by failing to disclose and/or misrepresenting the adverse facts detailed herein. As Defendants' misrepresentations and fraudulent conduct were gradually disclosed and became apparent to the market, the artificial inflation in the price of Baxter's stock was removed, and the price of Baxter stock fell.

58. As a result of their purchases of Baxter stock during the Class Period at artificially inflated prices, Plaintiff, and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

59. The timing and magnitude of the price decline in Baxter stock negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Baxter Defendants' fraudulent conduct.

**D.** *Presumption Of Reliance; Fraud-On-The-Market*

60. At all relevant times, the market for Baxter stock was an efficient market for the following reasons:

> (a) Baxter stock met the requirements for listing, and was listed and actively traded on the NYSE Stock Exchange, a highly efficient and automated market;

(b)     As a regulated issuer, Baxter filed periodic public reports with the SEC and the NYSE;

(c)     Baxter communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)     During the Class Period, on average, over several million Baxter shares were traded on a weekly basis. On news days, the Company's trading volume increased into the millions, reflecting an active trading market for Baxter stock and investors' expectations being impounded into the stock price; and

(e)     The proportion of statistically significant stock price movement days for Baxter stock on news days is significantly over the proportion of non-news days and, thus, Baxter shares are more likely to have a statistically significant return on a day with news than no-news, consistent with an informationally efficient market.

61.     As a result of the foregoing, the market for Baxter's securities promptly digested current information regarding Baxter from all publicly available sources and reflected such information in Baxter's stock price. Under these circumstances, all purchasers of Baxter securities during the Class Period suffered similar injury through their purchase of Baxter securities at artificially inflated prices, and a presumption of reliance applies.

62.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered Baxter's ability to control its supply chain issues when deciding whether to purchase and/or sell Baxter securities.

**E.     *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine***

63.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

64.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

65.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Baxter who knew that the "forward-looking statement" was false.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

66.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Class Action Complaint.  The statements alleged to be false and misleading herein all relate to then- existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Baxter who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action on behalf of all individuals and entities who purchased acquired Baxter securities on the public market during the Class Period, and were damaged, excluding Baxter, the Individual Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest (the "Class").

68.     The Class members are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of Baxter common stock were actively traded on the NYSE. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members

in the proposed Class. Record owners and other Class members may be identified from records maintained by Baxter or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of April 20, 2023, Baxter had approximately 505 million shares of common stock outstanding. Upon information and belief, these shares are held by thousands of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

69.     Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

70.     Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

71.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning Baxter's ability to surmount its potential supply chain problems;

(c)     whether the price of Baxter's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d)    whether the Class members have sustained damages and, if so, what is the proper measure of damages.

72.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 10(b) and Rule 10b-5 Against All Defendants

73.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other Class members to purchase Baxter securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

75.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Baxter securities in an effort to maintain artificially high market prices for Baxter securities in violation of Section 10(b) of the Exchange Act and Rule

10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

76. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's and thus the business and future prospects of Baxter as specified herein.

77. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Baxter's value, performance, and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Baxter's ability to manage its supply chain challenges in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Baxter securities during the Class Period.

78. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at Baxter during the Class Period and members of Baxter's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of Baxter, was privy to and participated in the creation, development and reporting of Baxter's SEC filings and public statements concerning Baxter's ability to manage its supply chain challenges; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other

members of Baxter's management team, internal reports and other data and information about Baxter's ability to manage its supply chain challenges, at all relevant times; and (4) each Individual Defendant was aware of Baxter's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

79.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Baxter's problems with being able to control its supply chain problems from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' misrepresentations concerning its supply chain issues throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

80.     As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Baxter securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Baxter securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class

Period, Plaintiff and the other Class members acquired Baxter securities during the Class Period at artificially high prices and were or will be damaged thereby.

81.    At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity and believed them to be true. Had Plaintiff and the other Class members and the marketplace known the truth regarding Baxter's ability to manage its supply chain challenges, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their Baxter securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

82.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

83.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of Baxter securities during the Class Period.

84.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II

### The Individual Defendants Violated Section 20(a) of the Exchange Act

85.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86.    The Individual Defendants acted as controlling persons of Baxter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of

Baxter's operations and/or intimate knowledge of the false information filed by Baxter with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Baxter, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of Baxter's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

87.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Baxter and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

88.     As set forth above, Baxter and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

89.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection with their purchases of Baxter's common stock during the Class Period.

90.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

Dated: July 12, 2023                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

_ s/ Nicholas R. Lange_____
Nicholas R. Lange
1111 Summer Street, Ste. 403
Stamford, CT  06905
Tel: (203) 992-4523
Email: nlange@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton
(*pro hac vice application forthcoming*)
55 Broadway, 4th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff Grover J. Kelley*